898

In re DILLARD FORD, INC., Debtor.

William E. WOODRUM, as
Trustee, Plaintiff,

v.

FORD MOTOR CREDIT
COMPANY, Defendant.

No. 83–60116.

Civ. A. No. CV690–012.

Adv. No. 85–6015.

United States District Court,
S.D. Georgia,
Statesboro Division.

Aug. 16, 1990.

C. James McCallar, Jr., Jack Berry, Asst. U.S. Trustee, Savannah, Ga., William E. Woodrum, Jr., Millen, Ga., for plaintiff.

M. Tyus Butler, Jr., Savannah, Ga., for defendant.

ORDER ON APPEAL

BOWEN, District Judge.

Defendant, Ford Motor Credit Co. ("FMC"), appeals the final order and judgment entered by the United States Bankruptcy Court for the Southern District of Georgia. The bankruptcy court tried the case on June 5, 1989. The facts, more amply stated in the order of the bankruptcy judge, are summarized as follows. Dillard Ford, Inc. ("Dillard"), a Ford dealership in Metter, Georgia, and FMC executed a floorplan financing contract. Under the contract, FMC financed Dillard's inventory and its retail credit sales. The contract incorporated an "Automotive Wholesale Plan, Application for Wholesale Financing

and Security Agreement" which created a security interest in favor of FMC in Dillard's current and after-acquired inventory, as well as in proceeds of the inventory. FMC properly filed a financing statement covering, among other things, "[a]ccounts, contract rights, chattel paper and general intangibles."

Dillard sold its retail installment contracts to FMC and agreed to repurchase contracts in default. FMC paid Dillard the face value of the contracts less a discount and less obligations FMC paid on Dillard's behalf. Pursuant to the contract, FMC withheld a portion of the retail sales proceeds due Dillard[1] as security for Dillard's obligations[2] to FMC. FMC designated funds withheld by a book entry entitled "Dealership Proceeds Withheld" ("DPW").

On August 31, 1983, Dillard issued two checks to FMC, totalling $17,374.19, in payment for Dillard's wholesale debt to FMC.[3] The bank returned the checks for insufficient funds. Consequently, FMC conducted an audit of Dillard's inventory and records. The audit revealed Dillard had sold another vehicle for which Dillard mailed a check to FMC drawn against insufficient funds.[4] FMC then suspended Dillard's line of credit and sight draft privileges.

Thereafter, FMC acquired from Dillard retail installment agreements with Radio Metter and J. Dorsey Smith totalling $29,299.73 and advised Dillard not to issue sight drafts to fund those contracts.[5] FMC issued checks payable to Dillard and/or Ford Credit to fund the contracts. Rather than paying Dillard for the contracts by honoring sight drafts, FMC applied the proceeds of the checks to Dillard's outstanding wholesale debt.

Dillard filed its Chapter 7 petition on September 9, 1983. William E. Woodrum, Jr., as trustee, filed an adversary proceeding seeking to recover the DPW funds and proceeds of the Radio Metter and Smith contracts. On December 15, 1989, the bankruptcy court awarded the trustee $36,283.52 as proceeds of the DPW account and $29,299.73 as proceeds of the retail sales contracts with Radio Metter and J. Dorsey Smith, plus interest.

Essentially, four issues are raised on appeal:

1) Whether FMC had a perfected security interest in the DPW account;

2) Whether FMC had a right of setoff with respect to the DPW account;

3) Whether $36,283.52 was the correct amount of the DPW account to be awarded to the trustee; and

4) Whether FMC had a right of setoff with respect to the Radio Metter and Smith contracts.

The appropriate standard for reviewing the findings of the bankruptcy court is whether the finding was clearly erroneous. Bankruptcy Rule 8013; *In re Garfinkle*, 672 F.2d 1340, 1344 (11th Cir.1982). The operative facts are not in dispute. Therefore, the bankruptcy judge's findings of fact are taken as correct.

■ FMC argues the DPW account is proceeds of secured collateral and that possession of the account perfected its security interest therein. FMC further contends that as a perfected secured party, its inter-

---

**1.** FMC withheld 3% of the face value of each contract. FMC distributed amounts aggregating more than 3% to Dillard on a monthly basis.

**2.** The funds withheld could be applied, for example, to unearned interest by Dillard if a customer prepaid his contract, or repossessions if Dillard failed to honor its repurchase agreement. Additionally, if Dillard failed to submit retail contracts on a regular basis, FMC deferred distribution of the proceeds until all contracts purchased from Dillard were satisfied.

**3.** "The two checks were to pay off the wholesale floorplan financing on two cars sold by the

debtor to a retail customer and covered by the floorplan financing agreements." (Bankruptcy Court's order, p. 6.)

**4.** FMC asserts that the amount of the check was $10,650.38. The Bankruptcy Court made no determination as to the amount of the check.

**5.** On August 29, 1983, Radio Metter purchased a vehicle from Dillard and financed $13,155.00. On August 30, 1983, J. Dorsey Smith purchased a vehicle from Dillard and financed $16,144.73. The installment contracts were fully executed.

est in the account subordinates the trustee's interest. Thus, FMC contends it is entitled to the funds by priority. However, in *Citicorp Homeowners, Inc. v. Walker,* No. CV185–104 (S.D.Ga. filed Nov. 7, 1985) and *Walker v. Commercial Credit Corp.,* CV182–212 (S.D.Ga.1983), this Court held that dealer reserve accounts do not constitute proceeds. Because *Citicorp* and *Commercial Credit Corp.* were factually similar to this case, those cases are controlling. The DPW account is not proceeds. Therefore, FMC's possession of the account did not perfect its security interest.

▪ FMC argues alternatively that its financing statement was sufficiently descriptive to perfect its security interest in the DPW account. The financing statement described the pledged collateral as "[a]ccounts, contract rights, chattel paper and general intangibles." FMC contends its financing statement was "reasonably calculated to generate further inquiry" by interested creditors and, therefore, comports with the notice requirements of the Uniform Commercial Code. In *Citicorp,* however, this Court expressly held a financing statement which described collateral as "[a]ccounts, [c]ontract [r]ights [and] [g]eneral [i]ntangibles" was overbroad, and did not "reasonably identify anything related to the dealer reserve accounts." *Citicorp, supra* at 4–5. Likewise, FMC's financing statement lacks specificity necessary to apprise creditors of its security interest in the account. FMC urges this Court to overrule prior decisions but fails to produce persuasive authority supporting its contention that the holdings are incorrect. FMC's argument is uncompelling. Based on the authority in this district, I conclude FMC did not perfect its security

interest in the DPW account with its financing statement.

▪ FMC contests the bankruptcy court's holding that FMC had no right of setoff in the DPW account. FMC contends its application of DPW funds to Dillard's debt was a "realization of collateral" rather than an "impermissible setoff." Moreover, FMC asserts its "realization of collateral" was permissible because it had a valid security interest in the reserve account. However, FMC was not entitled to "realize" its collateral in the account when, as discussed above, its security interest was unperfected. Because FMC had an unperfected security interest, the trustee, as a statutory lien creditor, had a superior interest in the reserve account.[6] Furthermore, FMC did not take on the status of a perfected secured party by virtue of the right of setoff.[7] This Court has made clear that a DPW account is not a debt subject to the setoff provisions of 11 U.S.C. § 553(a);[8] rather, the DPW account is an unencumbered asset of the estate. *Citicorp, supra.* Hence, the bankruptcy court correctly held the reserve account "did not represent money owed the estate by the defendant." (Bankruptcy Court's Order, p. 9). Because the account did not represent a debt owing to Dillard, there was no mutual debt, and therefore, no right of setoff existed in the account. *See Maun v. Salyapongse,* 92 B.R. 790, 797 (Bankr.S.D.Ill.1988).

FMC contends that the bankruptcy court erred in awarding the trustee $36,283.52 as proceeds of the reserve account rather than $24,139.39.[9] By a previous order, the bankruptcy judge required FMC to maintain $36,283.52 in the account. FMC cites *Lubman v. Savoran Bank,* 98 B.R. 243 (Bankr. E.D.Va.1989) as supporting the argument that FMC had a "contractual right to uti-

---

6. Under 11 U.S.C. § 544(a), the trustee has "the rights and powers of" a judicial lien creditor, a creditor who has executed and a bona fide purchaser of real property. The trustee acquires this priority status whether or not those creditors actually exist.

7. Under the setoff provisions of 11 U.S.C. § 553, secured status accrues to the creditor offsetting for the amount offset. *Braniff Airways, Inc. v. Exxon Co.,* 814 F.2d 1030, 1034 (5th Cir.1987).

8. The doctrine of setoff, as codified in 11 U.S.C. § 553, "permits the offset of mutual debts and credits." 4 *Collier on Bankruptcy,* ¶ 553.01 (L. King 15th ed. 1989).

9. On September 30, 1983, the DPW account had a balance of $36,283.52. That sum was diminished to $24,139.39 by the date of the Bankruptcy Court's final order as a result of rebates to customers who prepaid their contracts and as a result of repossessions.

lize the DPW account for the satisfaction of rebates and deficiencies" on retail contracts purchased from Dillard.[10] FMC incorrectly relies on the *Lubman* decision. The Court in *Lubman* held that reserve account's post-filing diminishment due to charges against the account was "inadequately explained." *Id.* at 245. Similarly, I find the decrease in this DPW account unacceptable. The bankruptcy court's prior order mandated without exception that the balance of the DPW account as of the filing date be maintained.[11] Therefore, FMC was not entitled to offset Dillard's obligations with DPW funds. For the foregoing reasons, the bankruptcy court's award of $36,283.52 as proceeds of the DPW account is AFFIRMED.

The bankruptcy court also awarded the trustee $29,299.73 as proceeds of the Radio Metter and Smith contracts which FMC acquired from Dillard. Instead of paying Dillard for the contracts, FMC reduced Dillard's debt to FMC within 90 days of Dillard's filing. FMC argues it had a contractual right[12] to apply proceeds of the Radio Metter and Smith contracts to Dillard's wholesale debt.

■ In the bankruptcy proceeding, the trustee sought to avoid the transfer as preferential pursuant to 11 U.S.C. § 547(b). The bankruptcy court held, however, that the funds were subject to FMC's right of setoff under section 553 because mutual claims existed. Nevertheless, section 553(b) limits what the creditor can set off.[13] "[T]he purpose of § 553(b) is to prevent preferred treatment to a certain creditor who may set off debts at the debtor's and other creditors' expense prior to filing." *In re Bass Mechanical Contractors, Inc.,* 88 B.R. 201, 204 (Bankr.W.D.Ark.1988); *Lee v. Schweiker,* 739 F.2d 870, 877 (3rd Cir.1984). The application of section 553(b) is mathematical. Under section 553(b) the trustee can recover amounts set off within 90 days of bankruptcy to the extent the creditor improves its position by decreasing the "insufficiency."[14] *See, e.g., In re Assiante,* 28 B.R. 903, 905 (Bankr.D.R.I.1983). On the date of setoff, FMC improved its position by offsetting $29,299.73[15] and thereby decreasing the insufficiency by that amount.[16] *Compare with In re Bass Mechanical Contractors, Inc.,* 88 B.R. 201 (Bankr.W.D.Ark.1988) (where creditor bank off set a mutual debt of $2753.88 and the debtor's checking account with the bank was overdrawn 90 days before filing, the insufficiency on the date of setoff was

**10.** In asserting its contractual claims, FMC relies on "The Automotive Wholesale Plan, Application for Wholesale Financing and Security Agreement" which provided, "Ford Credit, at all times, shall have a right to offset and apply any and all credits, monies, or properties of Dealer in Ford Credit's possession or control against any obligation of Dealer to Ford Credit." (see Plaintiff's Exhibit number 4).

**11.** Moreover, the stay provisions of 11 U.S.C. § 362 prohibited FMC from applying funds in the account to claims against Dillard. Section 362(a) provides that a bankruptcy petition "operates as a stay, applicable to all entities, of ... (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title...."

**12.** See footnote number 10.

**13.** 11 U.S.C. § 553(b)(1) provides:
[I]f a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on

the date of such setoff is less than the insufficiency on the later of—
(A) 90 days before the date of the filing of the petition; and
(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

**14.** Section 553(b)(2) defines "insufficiency" as the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such a claim."

**15.** The Bankruptcy Court determined that FMC improved its position by comparing the dividend FMC would have received as an unsecured creditor in the distribution if not for the setoff with what FMC would receive if allowed to retain the setoff funds. (Bankruptcy Court's order, p. 14) Although this "improvement in position" test is not the same as that in § 553(b) (see footnote number 13), the result in this case is the same.

**16.** In other words, FMC decreased by $29,299.73 the amount by which its claim against Dillard exceeded Dillard's claim against it. See footnote number 14.

$2753.88 less than it was 90 days before filing). Therefore, under section 553(b), the trustee is entitled to recover $29,299.73 for the two contracts. Accordingly, the bankruptcy court's award of $29,299.73 for the Radio Metter and Smith contracts is AFFIRMED. However, I will allow FMC to file with the bankruptcy court its proof of claim for checks received from Dillard for which there were insufficient funds. FMC is an unsecured creditor as to that claim and will share in the distribution accordingly. The case is REMANDED to the bankruptcy court for further proceedings consistent with this decision.

ORDER ENTERED.